**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MICHAEL MANOS,**

                              **Plaintiff,**

            **v.**                                          **9:03-CV-2**
                                                          **(FJS/DRH)**
**GLENN S. GOORD, Commissioner of Corrections;**          **LEAD CASE**
**RICHARD ROY, Inspector General of Corrections;**
**JOHN DUNLEVY, Agent of the Inspector General;**
**THERESA KNAPP-DAVID, Director of**
**Classification and Movement of Corrections;**
**STAN BERG, Asst. Deputy Superintendent at**
**Clinton Correctional Facility; SHARON BENSON-**
**PERRY, Corrections Counselor at Clinton Correctional**
**Facility; DALE ARTUS; DANIEL A. SENKOWSKI;**
**VINNIE BEZIO; and DONALD SELSKY,**

                              **Defendants.**

---
---

**MICHAEL MANOS,**

                              **Plaintiff,**

            **v.**                                          **9:03-CV-1512**
                                                            **(FJS/DRH)**
**RICHARD ROY, Inspector General of Corrections;**        **MEMBER CASE**
**JOHN KENDRA, Agent and Sr. Investigator of the**
**Inspector General; VINNIE BEZIO, Investigator of the**
**Inspector General; JOHN DUNLEVY, Agent of Inspector**
**General; and DOES, JOHN AND JANE #1-20,**

                              **Consolidated Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF JOEL S. WALTER**<br>225 Broadway, Suite 1608<br>New York, New York 10007<br>Attorneys for Plaintiff | **JOEL S. WALTER, ESQ.** |
| **OFFICE OF THE NEW YORK**<br>**STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants in *Manos I* | **NELSON SHEINGOLD, AAG** |
| **OFFICE OF THE NEW YORK**<br>**STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants in *Manos II* | **BRIDGET ERIN HOLOHAN, AAG** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

This action is composed of two civil rights actions that Plaintiff Michael Manos

commenced: *Manos v. Goord*, No. 9:03-CV-2 ("*Manos I*"), and *Manos v. Roy*, 9:03-CV-1512

("*Manos II*"). Plaintiff instituted these actions separately.[1]  Since Judge Kahn found that the facts

and occurrences set forth in the pleadings of *Manos I* and *Manos II* were related, he directed

consolidation of the two actions and designated *Manos I* as the lead case.  *See Manos I*, at Dkt.

No. 110; *Manos II*, at Dkt. No. 30.  In light of the consolidation order, Judge Kahn reassigned

*Manos II* to this Court because *Manos I*, the first of the two cases that Plaintiff filed, was pending

before this Court.  *See Manos I*, at Dkt. No. 110 at 6.

---

[1] At the time that Plaintiff filed these actions, he was proceeding *pro se.*  Counsel now
represents Plaintiff.

Plaintiff filed *Manos I* in this District on January 2, 2003.[2]  Plaintiff filed an amended

complaint on January 21, 2003.  *See Manos I*, at Dkt. No. 8.  On January 6, 2004, Plaintiff filed a

second amended complaint, which now forms the basis of *Manos I*.  *See Manos I*, at Dkt. No. 75.

In that amended pleading, Plaintiff alleges that, in a continuous course of action beginning in

1989 to the time that he commenced this action, "[D]efendants have forced [him] to act as an

informant against both guards and inmates throughout the New York State correctional system,"

*see id.* at ¶ 2, yet "failed to protect him from the repercussions thereof, which include serious

physical and psychological injury," *see id.*  Plaintiff further asserts that, from 1996 to the time

that he filed this action, "Defendants have failed to protect [him] from a series of sexual and

physical assaults, despite their knowledge that [he] was in danger of being so assaulted."  *See id.*

at ¶ 3.  Plaintiff further claims that "Defendants have . . . systematically violated [his]

constitutional rights by subjecting him to cruel and unusual conditions of confinement, including,

but not limited to, being locked down twenty-four hours a day with no opportunity for recreation

or religious observance."*See id.* at ¶ 4.

Based upon these facts, Plaintiff asserts three claims for relief in *Manos I*: (1) Defendants

deprived him of the rights, privileges and immunities secured by the Constitution in violation of

42 U.S.C. § 1983, *see Manos I*, at Dkt. No. 75 at ¶ 70; (2) Defendants failed to protect him

despite their knowledge that he was at substantial risk of harm, *see id.* at ¶ 78; and (3)

Defendants deprived him of the minimal civilized measure of life's necessities amounting to

cruel and unusual conditions of confinement, *see id.* at ¶ 81.  *Manos I* addresses the alleged

_____

[2] Plaintiff signed his original complaint on December 17, 2002.  *See Manos I*, at Dkt. No.
1.

-3-

injuries that Plaintiff suffered while he was incarcerated at Clinton, Attica, Auburn, and Shawangunk Correctional Facilities. *See generally Manos I*, at Dkt. No. 75.

*Manos II*, which Plaintiff originally filed in the Western District of New York, was transferred to this District on December 29, 2003.[3] *See Manos II*, at Dkt. No. 1. Plaintiff filed an amended complaint on December 23, 2003, *see id.* at Dkt. No. 5, and filed a second amended complaint on April 20, 2004, which forms the basis of *Manos II*, *see id.*, at Dkt. No. 8.

The allegations in this amended pleading mirror the allegations set forth in *Manos I*, namely, that in a continuous course of action beginning in 1989 to the present, Defendants forced Plaintiff to act as an informant and failed to protect him from the repercussions. *See Manos II*, at Dkt. No. 8 at ¶ 2. Plaintiff asserts two claims for relief in *Manos II*: (1) Defendants deprived him of the rights, privileges and immunities secured by the Constitution in violation of 42 U.S.C. § 1983, *see id.* at ¶ 41, and (2) Defendants failed to protect him despite their knowledge that he was at substantial risk of harm, *see id.* at ¶ 49. *Manos II* addresses the alleged injuries that Plaintiff suffered while he was incarcerated at Elmira, Attica, and Wende Correctional Facilities. *See generally Manos II*, at Dkt. No. 8.

Currently before the Court are Defendants' motions to dismiss the amended complaints in each of the consolidated actions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Manos I*, at Dkt. No. 86; *Manos II*, at Dkt. No. 20. Plaintiff has filed responses in opposition to both motions. *See Manos I*, at Dkt. No. 97; *Manos II*, at Dkt. No. 27. Defendants have replied to these responses. *See Manos I*, at Dkt. No. 103; *Manos II*, at Dkt. No.

---

[3] Plaintiff signed the original complaint in *Manos II* on October 31, 2003. *See Manos II*, at Dkt. No. 1 at 7.

29.

## II. DISCUSSION

**A.    Standard of review**

A court may not dismiss an action for failure to state a claim "'unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief.'"  *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (quotation and other citation

omitted).  Moreover, "the court must accept the material facts alleged in the complaint as true."

*Id.* (citation omitted).

Generally, when analyzing a Rule 12(b)(6) motion, the court limits its consideration to

the factual allegations in the complaint, which it accepts as true, to documents that the plaintiff

has attached to the complaint as an exhibit or incorporated in it by reference, to matters of which

the court can take judicial notice, and to documents that the plaintiff either has in his possession

or of which he had knowledge and upon which he relied in bringing suit.  *See Cortec Indus., Inc.*

*v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

> The "issue is not whether a plaintiff will ultimately prevail
> but whether the claimant is entitled to offer evidence to support the
> claims." *Williams*, 2005 WL 1414435, at *2 (internal quotation
> marks and citation omitted).  Indeed, a court's task on a motion to
> dismiss is a limited one.  It is "merely to assess the legal feasability
> of the complaint, not to assay the weight of the evidence which
> might be offered in support thereof." *Id.* at *3 (internal quotation
> marks and citation omitted).

*Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 409 (N.D.N.Y. 2005).

It is with these legal standards in mind that the Court will analyze Plaintiffs' complaints in

*Manos I* and *Manos II* and the parties' respective arguments regarding dismissal.


**B.      Factual allegations**

*1. Manos I*

Plaintiff entered the Department of Corrections system in or about 1989, and "[a]lmost immediately, [he] was coerced into becoming an informant against both fellow inmates and guards." *See Manos I*, Dkt. No. 75 at ¶ 27.  As a result of acting as an informant, "[P]laintiff's life and safety were placed in jeopardy" up though the time that he commenced this action. *See id.* at ¶¶ 28-29.

Plaintiff was confined at Auburn Correctional Facility between April 1996 and January 1997.  During that time, he was stabbed in the chest and cut in the face on April 4, 1996, in retaliation for participating in investigations in which Defendants Roy, Bezio and Dunlevy coerced him to participate. *See id.* at ¶¶ 30-31.[4]  In addition, Plaintiff was repeatedly sexually and physically assaulted between May and December 1996, including an incident on or about October 20, 1996, in which a guard forced him to perform oral sex. *See id.* at ¶¶ 33-34.[5]

In February 1997, Plaintiff was transferred to Attica Correctional Facility.  Defendants Goord, Roy, Bezio, Dunlevy, and Knapp-David placed him with known enemies at that facility

---

[4] Prior to this attack, Plaintiff and several of his friends and relatives warned Defendants Goord, Roy, Bezio and Dunlevy that he was in danger and requested that they take protective measures to ensure Plaintiff's safety. *See Manos I*, at Dkt. No. 75 at ¶ 32.

[5] Prior to the attacks that occurred from May through December 1996, Plaintiff had provided Defendants Berg, Roy, Bezio, Dunlevy, Knapp-David and Benson-Perry with the names of inmates and guards "who had been the targets of investigations in which [P]laintiff had participated, but these individuals continued to have access to [P]laintiff because [D]efendants did not place them on [P]laintiff's separation list." *See Manos I*, at Dkt. No. 75 at ¶ 35.

so that he could participate in another investigation. *See Manos I*, at Dkt. No. 75 at ¶ 36. As a result of this placement, "[P]laintiff attempted suicide and was confined to the Central New York Psychiatric Center for approximately seven months." *See id.* at ¶ 37. Central New York Psychiatric Center sent a report to Defendants Goord, Bezio, Dunlevy, and Knapp-David "stating that [P]laintiff's life would be in danger if he were to be placed at Clinton, Attica, Auburn, Great Meadow or Elmira Correctional Facilities." *See id.* at ¶ 38.

Despite this report, Defendants Goord, Bezio, Dunlevy, and Knapp-David transferred Plaintiff to Clinton Correctional Facility in November 1997. *See id.* at ¶ 39. While Plaintiff was housed at that facility, Defendants Roy and Bezio placed "him in 24-hour lockdown for one year in an attempt to coerce him into participating in additional investigations." *See id.* at ¶ 40. Moreover, during this period of time, "[P]laintiff was subjected to cruel and unusual conditions of confinement including, but not limited to, denial of necessary psychiatric services and of religious services and counseling," *see id.* at ¶ 41, and "was housed in an area where he had known enemies," *see id.* at ¶ 42. Fearing for his life, Plaintiff agreed to participate in another investigation, which took place between November 1998 and February 1999. *See id.* at ¶¶ 43-44. Investigator Coran and Deputy Superintendent Drolette warned Defendants that Plaintiff's life would be in danger if he stayed at Clinton Correctional Facility. *See id.* at ¶ 45. Despite this warning and in retaliation for lawsuits that Plaintiff filed in 1999, Defendants Goord, Roy, Bezio, Dunlevy, and Knapp-David housed Plaintiff for an additional six months with violent general population inmates at Clinton Correctional Facility. *See id.* at ¶ 47. During this six-month period, "[P]laintiff was kicked down a flight of stairs, cut and repeatedly assaulted." *See id.* at ¶ 48. Since Plaintiff feared for his life, "and under pressure from [D]efendants," Plaintiff

discontinued his pending lawsuits.[6]  *See id.* at ¶ 49.

During the year 2000, Defendants Goord, Roy, Bezio, Dunlevy and Knapp-David "placed [P]laintiff with known enemies at the Auburn Correctional Facility so that [he] could participate in another investigation."  *See Manos I*, at Dkt. No. 75 at ¶ 50.  In or about October 2001, these same Defendants "placed [P]laintiff with known enemies at the Shawangunk Correctional Facility so that [he] could participate in another investigation."  *See id.* at ¶ 51.  "[P]laintiff was repeatedly forced to have sexual relations with the Captain of Corrections at the Shawangunk Correctional Facility" between December 2001 and March 2002.  *See id.* at ¶ 52.

In May 2002, Plaintiff was transferred to Clinton Correctional Facility, despite warnings from Plaintiff, his friends and his relatives that his life would be in danger there.  *See id.* at ¶ 54.  Defendants coerced Plaintiff into joining another investigation.  *See id.* at ¶ 57.  Between August 2002 and October 2002, "[P]laintiff was repeatedly forced to have sexual relations with a Corrections Officer and a porter . . . ."  *See id.* at ¶ 59.  "On October 6, 2002, [P]laintiff was cut on the face and neck while returning from yard recreation."  *See id.* at  ¶ 60.  Due to this attack, Plaintiff was placed in Involuntary Protective Custody ("IPC") and put on twenty-four hour lockdown, denied recreation, fresh air, and religious services.  *See id.* at ¶¶ 61-62.  Despite being in IPC status, Plaintiff was housed with general population and reception inmates who daily threatened and terrorized him by, among other things, "hitting him in the head with bars of soap and cans, spitting on him, and throwing urine in his face."  *See id.* at ¶ 64.  On October 18, 2003,

---

[6] In addition to these consolidated actions, Plaintiff has filed only one other action in this District.  *See Manos v. Goorde*, No. 6:99-CV-1463.  Although Plaintiff originally filed this action in the Southern District of New York, that court transferred the matter to this District. Plaintiff requested a voluntary dismissal of this action, which this Court (Kahn, J.) granted by Order dated February 25, 2000.  *See id.* at Dkt. No. 14.

a general population inmate sexually assaulted Plaintiff.  *See id.* at ¶ 65.  For the injuries that he

has suffered, Plaintiff seeks substantial monetary damages.


### 2. *Manos II*

As in *Manos I*, Plaintiff alleges that, as a result of acting as an informant for Defendants,

his life and safety were placed in jeopardy up through the time that he commenced this action.

*See Manos II*, at Dkt. No. 8 at ¶ 2.  In January 1997, Defendants Roy, Bezio and Dunlevy

transferred Plaintiff to Elmira Correctional Facility and placed him with known enemies so that

he could participate in an investigation.  *See id.* at ¶ 24.  On January 12, 1997, Plaintiff received a

nine inch cut on his face and neck; and, on January 18, 1997, he was burned on his back, chest

and arm.  *See id.* at ¶¶ 25-26.  The January 1997 attacks were in retaliation for his participation in

the investigation.  *See id.* at ¶ 27.  Prior to these attacks, Plaintiff and several of his friends and

relatives warned Defendants Roy, Bezio and Dunlevy about the danger to Plaintiff and asked

them to take protective measures to ensure Plaintiff's safety.  *See id.* at ¶ 28.

In February 1997, Defendants Roy, Bezio, and Dunlevy placed Plaintiff with known

enemies at Attica Correctional Facility so that he could participate in another investigation; as a

result of this placement, Plaintiff attempted suicide and was transferred to Central New York

Psychiatric Center.  *See id.* at ¶¶ 29-30.  In November 2000, Defendants Roy, Bezio and Dunlevy

transferred Plaintiff to Wende Correctional Facility and placed him with known enemies so that

he could participate in another investigation.  *See id.* at ¶ 31.  Plaintiff requested, but was denied,

protective custody.  *See id.* at ¶ 32.  Defendant Bezio, speaking on his own behalf as well as on

the behalf of the other Defendants, forced Plaintiff to cooperate in the investigation and to have

sex with several individuals by threatening to send him back to Clinton Correctional Facility. *See id.* at ¶¶ 33-34. Defendants Roy, Kendra, Bezio and Dunlevy (1) forced Plaintiff to participate in investigations and to fabricate evidence against innocent individuals and (2) were deliberately indifferent to Plaintiff's safety. *See id.* at ¶¶ 35-36. Finally, Defendant Bezio, in an attempt to coerce Plaintiff to cooperate, released an inmate from the Special Housing Unit; that inmate knew about Plaintiff's participation in investigations and subsequently set fire to Plaintiff's cell, causing severe injury to Plaintiff. *See id.* at ¶¶ 37-38.

### C.     The law

In *Manos I*, Defendants ask the Court to dismiss the claims in Plaintiff's amended complaint to the extent that they are based on incidents that occurred prior to January 2, 2000. *See Manos I*, at Dkt. No. 86, Notice of Motion. In *Manos II*, Defendants ask the Court to dismiss the allegations in Plaintiff's amended complaint to the extent that they are based on incidents that occurred prior to October 31, 2000. *See Manos II*, at Dkt. No. 20, Notice of Motion. Defendants assert that, because Plaintiff filed his respective original complaints on January 2, 2003 (*Manos I*), and on October 31, 2003 (*Manos II*), any claims that are based on incidents that occurred prior to January 2, 2000, or October 31, 2000, respectively, are time-barred. *See Manos I*, at Dkt. No. 86; *Manos II*, at Dkt. No. 20.

Moreover, Defendants argue that Plaintiff cannot benefit from the continuing-violation doctrine because (1) the allegations that he sets forth in his amended complaints are a series of discrete events, rather than an ongoing policy of abuse; (2) the acts about which he complains are not continuous in time; and (3) his "bald declarations that he has somehow been 'forced' to act as

an informant" are insufficient to support a claim under the continuing violation doctrine. *See Manos I*, at Dkt. No. 86, Memorandum of Law; *Manos II*, at Dkt. No. 20, Memorandum of Law. Plaintiff opposes Defendants' motions to dismiss. *See Manos I*, at Dkt. No. 97; *Manos II*, at Dkt. No. 27. Plaintiff maintains that, because of the continuous and ongoing nature of Defendants' actions, the statute of limitations for his claims has been tolled. Plaintiff also points out that his amended complaints do, in fact, allege a continuous course of action on the part of Defendants to force him to serve as an informant, while at the same time failing to protect him from the dangers inherent in acting as an informant. *See Manos I*, at Dkt. No. 97; *Manos II*, at Dkt. No. 27.

Moreover, Plaintiff argues that, even if the continuing-violation doctrine does not apply, his claims from 1996 to the present are timely under the duress toll. *See Manos I*, at Dkt. No. 97. In reply, Defendants assert that duress tolls the statute of limitations only where duress is an element of the claims asserted and that duress is not an element of any of Plaintiff's claims. *See* Dkt. No. 103, Memorandum of Law at 3-9.

### 1. The applicable statute of limitations

Plaintiff frames his amended complaints as filed pursuant to 42 U.S.C. § 1983. "Section 1983 establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S. Ct. 2510, 2516, 110 L. Ed. 2d 455 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (noting that § 1983 "is the vehicle by which individuals may seek

-11-

redress for alleged violations of their constitutional rights" (citation omitted)).

"The applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) (citations omitted). The date of accrual of a § 1983 claim, however, is a matter of federal law. *See Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992) (citation omitted). "A § 1983 cause of action accrues 'when the plaintiff knows or should know of the injury that is the basis of the cause of action.'" *Covington v. City of N.Y.*, 916 F. Supp. 282, 285 (S.D.N.Y. 1996) (quoting *Woods v. Candela*, 13 F.3d at 575). "[I]n determining when the statute begins to run, the '"proper focus is on the time of the [illegal] act, not the point at which the consequences of the act become painful."'" *Id.* (quotation omitted).

Notwithstanding the foregoing, the statute of limitations may be subject to equitable tolling under various theories, including the continuing-violation doctrine and duress.

### 2. The continuing violation doctrine

"The continuing-violation exception 'extends the limitations period for all claims of [wrongful] acts committed under [an ongoing policy of [doing so]] even if those acts, standing alone, would have been barred by the statute of limitations." *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (quotation omitted). "[I]f the plaintiff demonstrates a continuing violation, the statute of limitations is tolled and 'does not begin until the last injurious act.'" *DeJesus v. Anstrong*, No. 9:04-CV-1037, 2006 WL 2708577, *3 (N.D.N.Y. Sept. 20, 2006) (quotation omitted). "To allege continuing violation, the plaintiff must 'allege both the existence of an ongoing policy of [wrongful conduct] and some non-time-barred acts taken in furtherance

-12-

of that policy.'" *Shomo v. City of N.Y.*, No. 03 Civ. 10213, 2005 WL 756834, *6 (S.D.N.Y. Apr. 4, 2005) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)); *see also Waul v. Wright*, No. 9:05-CV-24, 2006 WL 1686546, *2 (N.D.N.Y. June 16, 2006) (citation omitted). Moreover, "[t]he acts about which a plaintiff complains must be continuous in time with one another and with the timely acts that plaintiff has alleged for the doctrine to apply; a lack of temporal continuity in allegedly [wrongful] acts is 'fatal' to a 'continuing violation' argument." *Everson v. N.Y. City Transit Auth.*, 216 F. Supp. 2d 71, 79 (E.D.N.Y. 2002) (quoting *Quinn*, 159 F.3d at 766) (other citation omitted). Thus, "[t]he cases applying the doctrine require a 'dogged pattern' of related acts before the series rises to the level of a continuing violation." *McFarlan v. Coughlin*, No. 97-CV-740, 1998 WL 185571, *8 (N.D.N.Y. Apr. 15, 1998) (citing *Houck v. City of Prairie Village*, 924 F. Supp. 120, 122 (D. Kan. 1996)).

To the contrary, "[a] party cannot invoke the doctrine to avoid statute of limitations problems when he knew after each allegedly wrongful act that it was actionable, but chose not to file federal claims regarding them within the limitations period." *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 262-63 (N.D.N.Y. 2003) (citing *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279, 282 (7th Cir. 1993)). Likewise, claims that are "too diverse and disconnected [do not] constitute a 'dogged pattern' of [wrongdoing]." *McFarlan*, 1998 WL 185571 at *8 (footnote omitted). Finally, "[a]pplying the doctrine generally requires courts to balance the interests of the plaintiff in having his claim litigated against those of defendants who may be called into court to defend against outdated claims." *Id.* at *9 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 256-57, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980)).

### a. Application of the continuing-violation doctrine to § 1983 claims in general

Before addressing Plaintiff's assertion that his claims are timely under the continuing violation doctrine, the Court must determine whether this doctrine applies to § 1983 claims. Traditionally, this doctrine was available in Title VII employment discrimination suits and thus the majority of cases discuss this doctrine in that context. *See Remigio v. Kelly*, No. 04 CIV 1877, 2005 WL 1950138, *6 (S.D.N.Y. Aug. 12, 2005) (citations omitted). However, "the continuing-violation doctrine has been applied, both by the Second Circuit and by courts in other jurisdictions, to a variety of non-Title VII claims, including a range of constitutional theories." *Id.* at *7 (citing cases). In fact, several courts in this Circuit have recognized that the doctrine applies in § 1983 actions. *See generally DeJesus*, 2006 WL 2708577 (deliberate medical indifference claim); *Waul*, 2006 WL 1686546 (deliberate indifference claim); *Shomo*, 2005 WL 756834 (deliberate indifference claim); *Jackson v. N.Y. State*, 381 F. Supp. 2d 80 (N.D.N.Y. 2005) (due process claims); *Griswold v. Morgan*, 317 F. Supp. 2d 226 (W.D.N.Y. 2004) (deliberate medical indifference claim); *Konigsberg*, 267 F. Supp. 2d 255 (conspiracy to violate the plaintiff's constitutional, statutory, and civil rights). Moreover, the Second Circuit has applied the continuing violation doctrine to a § 1983 action without discussion. *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). Accordingly, given the wide variety of claims to which courts have applied this doctrine in this Circuit, the Court finds that the continuing-violation doctrine applies to Plaintiff's § 1983 claims.

### b. Applicability of the continuing-violation doctrine to this action

Plaintiff filed his complaint in *Manos I* on January 2, 2003, and in *Manos II* on December

23, 2003. *See Manos I*, at Dkt. No. 1; *Manos II*, at Dkt. No. 1. Since the Second Circuit has held

that an inmate has filed his complaint upon his delivery of that pleading to prison officials, *see*

*Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (citation omitted), the Court will presume that

Plaintiff handed his complaints to prison officials on the dates that he signed those complaints.

Plaintiff signed the complaint in *Manos I* on December 17, 2002. *See Manos I*, at Dkt. No. 1.

Plaintiff signed the complaint in *Manos II* on October 31, 2003. *See Manos II*, at Dkt. No. 1.

Therefore, for purposes of determinating the statute-of-limitations period for Plaintiff's claims,

the Court will deem that Plaintiff filed his complaints in *Manos I* and in *Manos II* on December

17, 2002, and October 31, 2003, respectively.[7]

    In his amended complaints, Plaintiff alleges claims that are based, at least in part, on

incidents that occurred as early as 1996, well beyond the three-year limitations period for either

of his consolidated complaints. Plaintiff, however, argues that none of his claims are time-barred

because of the continuing-violation doctrine. Specifically, Plaintiff contends that Defendants

engaged in a continuous course of conduct by coercing him to act as an informant against guards

and inmates, while failing to protect him from the repercussions thereof. *See Manos I*, at Dkt.

No. 75 at ¶ 2; *Manos II*, at Dkt. No. 8 at ¶ 3.

    Defendants contend that the continuing-violation doctrine does not apply to Plaintiff's

allegations. *See Manos I*, at Dkt. No. 86; *Manos II*, at Dkt. No. 20. Defendants assert that, for

---

[7] The Court will review Defendants' motions to dismiss with these "filing dates" in mind. Thus, the Court will consider Defendants' motion to dismiss in *Manos I* as seeking dismissal of Plaintiff's claims to the extent that they are based on incidents that occurred prior to December 17, 1999, and will consider Defendants' motion to dismiss in *Manos II* as seeking dismissal of Plaintiff's claims to the extent that they are based on incidents that occurred prior to October 31, 2000.

the doctrine to apply, a plaintiff must show a "'dogged pattern' of related acts before the series rises to the level of a continuing violation." *See Manos I*, at Dkt. No. 86 at 3 (citing *McFarlan*, 1998 WL 185571, at *8). Defendants also contend that, in order to benefit from the doctrine, "'[t]he acts about which a plaintiff complains must be continuous in time with one another and with the timely acts the plaintiff has alleged . . .; a lack of temporal continuity in allegedly [wrongful] acts is "fatal" to a "continuing violation" argument.'" *See Manos I*, at Dkt. No. 86 at 3 (quoting *Everson v. N.Y. City Transit Auth.*, 216 F. Supp. 2d 71, 79 (S.D.N.Y. 2002)). Defendants argue that Plaintiff has alleged only discreet acts; that, at the time that each act occurred, Plaintiff was aware of the injury that the act caused; and that, therefore, Plaintiff does not allege a continuing violation. *See Manos I*, at Dkt. No. 86; *Manos II*, at Dkt. No. 20.

To support their argument that the incidents that Plaintiff alleges were discrete acts amenable to suit after Plaintiff was aware that he suffered injury from each act, Defendants include a copy of an Order granting Plaintiff's motion for voluntary dismissal of a prior action that Plaintiff filed. That prior action contained some of the same allegations as those Plaintiff set forth in the present consolidated actions.[8] *See Manos I*, at Dkt. No. 103, Attachment; *Manos II*, at Dkt. No. 20, Holohan Aff., Exhibit "D." However, Plaintiff alleges that Defendants coerced him into withdrawing the prior action; specifically, he contends that Defendants placed him with violent general population inmates for six months in an attempt to make him withdraw that

---

[8] The Court notes that, in deciding a motion to dismiss, its consideration is limited to the factual allegations in the complaint, which it accepts as true, to the documents that the plaintiff has attached to the complaint as an exhibit or incorporated by reference, **to matters of which the court may take judicial notice**, and to documents in the plaintiff's possession or of which the plaintiff had knowledge and upon which he relied in bringing suit. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). The Court, therefore, may take judicial notice of the Court's Order filed in *Manos v. Goorde*, No. 6:99-CV-1463, at Dkt. No. 14.

-16-

action.[9]

Given the liberality afforded at the pleading stage, i.e., dismissal is only appropriate if a plaintiff can plead no set of facts that would support a continuing violation, the Court finds that Plaintiff's allegations of a continuing violation are sufficient to survive Defendants' motions to dismiss. In making this determination, the Court is not making a finding at this time as to whether or not Plaintiff's claims are time-barred; it is only concluding that his allegations are sufficient to survive dismissal at this juncture.

### 3. The duress toll

Plaintiff argues that, even if the continuing-violation doctrine does not apply to his claims, the three-year statute of limitations was tolled on all of his claims because he was under duress from Defendants continuously between 1989 and the present.

Since the Court has applied the New York statute of limitations to this action, the Court must also look to New York tolling rules to the extent that they are not inconsistent with federal law. *See Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484-86 (1980). "Under New York law, 'when duress is part of the cause of action,' the statute of limitations is tolled until the duress had ended 'because the offensive conduct is regarded as a continuous wrong.'" *Overall v. Klotz*, 846 F. Supp. 297, 300 (S.D.N.Y. 1994) (quotation and other citation omitted). However, duress tolls the New York statute of limitations "**only if the alleged duress is 'an element of the cause of action asserted**.'" *Id.* at 300 n.2 (emphasis added).

_____

[9] The question of whether Plaintiff "voluntarily" withdrew his prior action or did so under duress presents a question of fact not amenable to resolution on a motion to dismiss.

-17-

In his amended complaints, Plaintiff alleges that Defendants denied him certain constitutional rights, failed to protect him from a known danger, and subjected him to cruel and inhuman punishment by denying him the basic necessities of life.  Plaintiff's claim that Defendants denied him his constitutional rights is self-explanatory; Plaintiff must demonstrate that, through their action or inaction, Defendants denied him certain constitutionally protected rights.  "In order to prevail on a claim that conditions of confinement constitute cruel and unusual punishment . . . a 'plaintiff must demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs' or deprived him 'of the minimal civilized measure of life's necessities' . . . and that a prison official acted with a 'sufficiently culpable state of mind.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 296 (N.D.N.Y. 2003) (citations omitted).  Specifically, to assert a failure-to-protect claim, a plaintiff must allege that he was incarcerated under conditions posing a substantial risk of danger and that a prison official acted with "deliberate indifference" to that danger.  *See Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996).  Duress is not an element of Plaintiff's constitutional, conditions of confinement, or failure to protect claims.  Accordingly, since none of Plaintiff's claims incorporate duress as an element, Plaintiff cannot take advantage of the duress toll.

## III. CONCLUSION

After reviewing the files in these consolidated actions, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss in *Manos I* is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to dismiss in *Manos II* is **DENIED**; and the Court further

**ORDERS** that these consolidated actions are referred to Magistrate Judge Homer for all further pretrial matters; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

Dated: March 21, 2007
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge